We're next hearing United States v. Mann, number 17-2117. Counsel, you may proceed. May it please the Court, Fanula Tessier on behalf of the United States. If I may, I'd like to reserve three minutes for rebuttal, please. Federal serious bodily injury assault necessarily involves the use, threatened use, or attempted use of violent physical force. We know this from this Court's recent decision in Ontiveros, which, applying Kauffman, held that serious bodily injury necessarily results from the use of violent physical force. It makes no difference that the defendant need not have intended the injury. A 113A6 conviction requires proof that the defendant acted volitionally, consciously disregarding a known risk of serious bodily injury, and actually caused such injury. As Voisin teaches us, a defendant who so acts is, in fact, using force. The District Court's decision to the contrary was based primarily on a mistaken view that Voisin applies only in the misdemeanor crime of domestic violence context. But the District Court did not have the benefit of this Court's more recent decisions in Pam and Hammond's, To be sure, as defendant notes, that Pam and Hammond's involved different predicate statutes. And defendant notes that those statutes expressly required intentional conduct. But so does 113A6. It requires a conscious disregard of a known risk of serious bodily injury. As Voisin explained, that such conduct involves a deliberate decision to endanger another. And as this Court explained in Zuni, such an act amounts to an act done voluntarily and intentionally. Moreover, it makes even more sense to apply Voisin to 924C, the statute at issue here, than it does to the ACCA. Now there are several differences between various statutes that the defendant and the District Court point to in arguing that Voisin does not apply here. The penalties, the statutory language, and the context of the statute. As for the penalties, as the District Court noted, the penalties for a 922G9 violation, that's the misdemeanor crime of domestic violence statute, are less than for a 924C violation at issue here. But that's because they criminalize very different types of conduct. 922G9 criminalizes the simple possession of a firearm after a prior misdemeanor conviction. 924C makes it a new crime to use or brandish, or in the case of this particular defendant, discharge a firearm in the course of a crime of violence. So it's not surprising that the penalties for a 924C violation are greater. Secondly, the statutory language. There are several differences between the 922G9, the ACCA, and 924C in how they define against whom or what the force may be used. For 922G9, they don't use an against phrase, but rather define the relationship between the victim and the perpetrator. But force must, in fact, be used against a person. For the ACCA, force must be used, quote, against the person of another. 924C has the broadest of these definitions and requires only that force be used against the person or property of another. That phrase does not mean that there is a higher mens rea requirement for 924C, but simply defines where the force must be applied. And then finally, the context of the statute. Although the Voisin court's analysis was based primarily on the term use and the meaning of recklessness, which do not change from statute to statute, the Voisin court did note that its determination that a reckless causation of bodily injury was a use of force, comported with a common sense understanding of what Congress intended. To hold otherwise would have meant that the majority of assault statutes for the various states would not count as misdemeanor crimes of domestic violence. That result, the Voisin court said, did not make any sense. But so too for a 924C violation. If we are to interpret 924C's crime of violence definition the way the district court did and the defendant asks, you would be excluding many federal assaults and even arguably federal murder from the definition of a federal crime of violence. That makes little sense. To the contrary, assault resulting in serious bodily injury is the quintessential crime of violence. For that reason, the district court's decision to dismiss the indictment was in error and should be reversed. Under section 113A6, could you violate that statute by reckless driving? Yes, in a sense, is the answer. Zuni is a Tenth Circuit case. You have to have sufficient facts from which the jury could infer that a defendant acted in conscious disregard of a known risk. And yes, in Zuni that was particularly reckless driving. Well, if you go back to the Supreme Court's decision in Leocal, the Supreme Court says whether a state says that use of physical force against another person suggests the category of violent active crimes that cannot be said naturally to include DUI offenses. If you had somebody who knocked back a bunch of alcohol and then consciously, in disregard for what that could do to people on the road, gets in and drives their car, they would fall under 113, they could be convicted on 113. Does Leocal then tell us that we shouldn't treat that statute as a crime of violence? No, it does not. And why not? For two reasons. So first of all, the drunk driving statute at issue in Leocal did not have a reckless mens rea requirement. Rather, it was simple negligence or even strict liability. And so the court in Leocal, as the court later explained in Boisin, was not drawing a line between knowing and reckless conduct, but was rather drawing a line between reckless and negligent conduct. So the Leocal statute did not require a conscious disregard of a known risk at all. Rather, it simply required drinking and driving and nothing more, the unadorned offense of drunk driving. That's not what 113A6 prohibits. 113A6 requires that the jury actually find that the defendant consciously disregarded a known risk. Now, in fact, in some cases that involves someone who is drinking and driving, but you don't see simple drinking and driving negligent conduct charged under 113A6, but rather quite extreme conduct as was at issue in Zuni. In that case, the defendant didn't simply drink and drive, but rather he drove a one-ton truck 25 miles over the speed limit. He swerved across the median. He made aggressive maneuvers. He hit the victim's car head-on. And the court of appeals said from that particular set of conduct, a jury could infer that the defendant acted recklessly. Is it accurate to say that section 113A6 requires willful conduct? It does require willful conduct. That's precisely the jury instruction that was given in Zuni that this court blessed. The jury was instructed that assault is a willful attempt or threat to inflict injury upon someone else, and that an act is willful when it is done voluntarily and purposely or in reckless disregard for the safety of others. So, yes, it does require a willful act. It simply doesn't require that the defendant intended the resulting harm. It is silent as to whether the defendant must have intended the harm. And as Boazine says, while there may be a line between reckless and negligent conduct, there's not a line between knowing and reckless conduct, because those two types of conduct are actually quite similar to one another. Both require that a defendant acted volitionally, knowing that there was a risk that harm would result. Knowing conduct requires that you know there's a substantial certainty that the result will happen, whereas reckless conduct requires less certainty than that. Counsel, what about the hypothetical, I stumbled across in preparing for this, about the throwing the plate against the wall and a piece of the plate ends up hurting someone? Could that be a violation of 113A6? Well, it would have to result in serious bodily injury, and the defendant would have to be aware of that risk. The model penal code explains... But is that force against a person or property? So it is force. You know that it is force against the person, because as this court held in Ontiveros, if you actually have serious bodily injury, that can only result from the application of force to the person. It doesn't matter whether the force is direct or indirect. And so perhaps the force is indirect in the sense that you don't yourself smack the person in the face or hit them, but neither is it technically direct force if you pull the trigger on a gun and the bullet hits somebody. So again, these determinations always depend on the very specific facts of the case. But if the facts were such that the jury could find that the defendant who threw a glass against the wall knew that there is a risk that they would cause serious bodily injury, consciously disregarded that risk, and in fact caused that serious bodily injury, then yes, the defendant could be convicted under 113A6. You just got to prove all those things. Yes, we have to prove all of those things. That's correct. And that's why it is... I mean, that is not the easiest of standards to meet. And so, you know, Judge... Sorry, Justice Thomas in his Voisin dissent was concerned about the text messaging father who might be held liable for a crime of violence. But of course you don't see prosecutions under 113A6 for a text messaging father, because in addition to the conscious disregard of the known risk, the model penal code also says that the defendant's conduct has to be a gross... based on the circumstances known to him. So again, requiring the defendant's knowledge must be a gross deviation from the standard of care that a law-abiding person would take. That's not simply a criminal negligence or even a strict liability you would have under a DUI statute, but a much higher standard. Is it appropriate for you to rely on our decisions in Hammons and Pam when they addressed whether there was a crime of violence under the elements clause of the ACCA? And here we're looking at the elements clause of 924C3A, which contains the additional words or property. Well, if anything, that phrase or property makes 924C apply to a broader category of crimes. But I think that you can look to the reasoning of Pam and Hammons, and certainly the fact that they were applying Voisin outside of the misdemeanor crime of domestic violence context strongly encourages the application of Voisin to the 924C. Most of the arguments about why not to apply Voisin are that it is limited solely to that specific statute. And of course, Pam and Hammons, at least in this court, that's not correct. If the court has no further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you. May it please the court, counsel. The district court acted properly in dismissing the indictment which charged Mr. Mann with discharging a firearm during a crime of violence, because assault resulting in serious bodily injury is not categorically a crime of violence. To be guilty of discharging a crime during a crime of violence, the defendant must use violent, purposeful, physical force against the person. The defendant has to act intentionally or willfully or deliberately, and most important, without any kind of justification. As we would say in the mens rea context, with an abandoned and malignant heart. The defendant must choose to use the force and consciously desire that application against the person of another. What about recklessly? Recklessness is not subsumed within the definition of crime of violence. So how do you get around our decision in Pam? Pam is the interpretation of New Mexico's assault statute, and Justice McHugh rightly looked to the jury instructions that defined that as a willful attempt. Your Honor, you have to take a categorical approach, but you're also implicating Mr. Mann's Sixth Amendment rights, and remember the facts of this case to illustrate how perilous and difficult that distinction is. Mr. Mann fired into a crowd of people on the night of July 21, 2010. He feared for his life when a mob attacked him, when a man came under a barbed wire fence and continued to approach to him despite a warning shot. He was charged with second-degree murder and found not guilty of that offense. He was charged with assault with intent to commit bodily injury, and he was found not guilty of that offense. The jury found him guilty of assault resulting in serious bodily injury, which didn't require the same level of intent, which requires only a general intent, namely to do an act which results in serious bodily injury. And although we find ourselves in the mire between Leocal and Voisin, it's important to recognize that reckless conduct falls on the side of the line. We find ourselves there, but how do you find yourself under Zuni? It's clear that under Zuni that a person can commit assault resulting in serious bodily injury recklessly, Mr. Mann does not contest his conviction. But didn't Zuni say that the, to violate the statute requires a volitional act? I don't think it's, I think volitional is honestly a misnomer, Your Honor. I think it's something a little bit more than volitional, because volitional would mean anytime you pull a trigger and someone is injured, you've committed a 924C. I'll give you three examples of why that's not true. First, think of the man in Utah who's engaging in a target practice in a federal enclave like a forest and thinks no one's there, thinks there's no one, it's unpopulated. But he does it in the height of hunting season when he should reasonably know that there are lots of hunters there. And he injures someone. He meant to pull the trigger. He was consciously disregarding the risk of injury to a hunter. He's guilty of a crime, but he did not use a firearm during a crime of violence. Think of a woman in Colorado who's on a military base and she celebrates the new year by firing a weapon into the air. The bullet comes out, goes down, hits an individual on that base. She is guilty of assault resulting in serious bodily injury. But did she engage in a crime of violence? If you use a definition of volitional, yes, she volitionally pulled that trigger, yes, that bullet came down and hit someone, crime of violence. But that's not a crime of violence. That doesn't have that violent, active, purposeful force against the person of a number. 924C requires a mens rea. And that mens rea adds to two elements. Not just the employment of force, the pulling of the trigger, but the intention of its consequences. To be guilty, the defendant must choose to use force and desire that application of force. If someone is reckless, they're not even aware that they're going to hurt someone else. And, indeed, that's what we're facing here, the irony of this case. And, again, I only use it for... Don't you have to be aware to be reckless under the definition of... It's got to be a conscious disregard. Yes, right, Your Honor, and it's important. The reason I call it a mire is because we conflate so many definitions so quickly, it's hard to keep them separate. So let's talk about reckless. Yes, the conduct is reckless. Yes, reckless conduct can get you convicted of assault resulting in serious bodily injury. But, no, reckless conduct is not a crime of violence. That crime of violence requires that purposeful, intentional, willful conduct that's more odious, that's more worthy of condemnation, than simply reckless conduct. So that when we talk about Pam's and Hammond's, we're talking about statutes that specifically incorporate that element of intent that makes it a crime of violence. In Pam, it was the willful discharge of the firearm. In Hammond's, it was the intentional use of a vehicle to facilitate the discharge of that firearm. But isn't really the difference between those statutes and this statute is that they're more limited in the sense that they identify specifically what the volitional act has to be. We're here, and it can be any volitional act, so long as you consciously disregard the risk of harm to others. I think that's right, but I think what's more important for Pam's and Hammond's is in the elements of intent of the statute, whether as written or as instructed to the jury, you know this conduct is willful, and you know this conduct is intentional. And we came to this pass in Mr. Mann's case because as trial counsel for Ms. Counsel. Just following up on your last point, how would you apply that to the statute that was involved in the Guazine case? Your Honor, I went back and I read Curtis Johnson and Castleman and then Guazine. And it jumped out at me in a way that wasn't made clear in our briefs that what they did in Guazine and Castleman was they took a common law term of art, use of force, and interpreted as Congress intended it to be interpreted because Congress employed a common law term of art. And so they incorporated it broadly. And Judge Sotomayor explained beautifully why that is necessary in the domestic violence context. This that we're struggling with today is not a common law term of art, it is a statutory word. And we cannot assume that a statutory word is used as a common law term of art where the meaning doesn't fit. And that's where we find ourselves. And I thought it was brilliant when Justice Sotomayor says the very reasons we gave for rejecting that meaning, that common law meaning that they used in Guazine and Castleman in defining a violent felony are the very reasons to embrace it in defining the misdemeanor crime of domestic violence. That's an important distinction. Because on one statute you're taking use, use of force, in its most common context. And, yes, use of force in its most common context involves reckless conduct. That's easy. We want to keep guns out of the hands of misdemeanors committed of domestic violence. If they use force, including reckless force, they can have a gun. But that's not crime of violence against a person. That's not a common law term, that's a statutory term. That's a statutory term that has, you know, kept lawyers and judges in this moment for years since Leocal. And in every moment the government has advocated for the most broad interpretation. Remember in Leocal they said no mens rea at all. And now in every context whatever mens rea we can get we'll take. But it's more subtle than that because we're talking about crime of violence against a person. We're not talking about injuring a person. We're not talking about harming a person. We're not talking about committing reckless acts to be guilty of a predicate offense. We're talking about violent, intentional, purposeful conduct that actively employs the use of force. You know, your honors, you have to see this case. The third example, aside from the hunter and the New Year's Eve celebrant, what about the homeowner who stands his ground? Because that's what Mr. Mann was. Not one but at least members of two juries have come to the unanimous conclusion that this man lacked any intent to harm anyone. Yes, he was reckless, no doubt about it. Yes, he needs to be punished. He is being punished. The question is, in that recklessness, is standing in his home as a mob of people come at him, one man comes under a far broad fence after a warning shot and continues to advance on him. Does an imperfect self-defense amount to a crime of violence? Can 113A subsume an act of imperfect self-defense? Absolutely. Well, in that third hypothetical, isn't the shooter acting intentionally? And that's what makes it difficult, because he is acting intentionally. And he's acting in self-defense. To ameliorate the threat that is coming at him. And when the bullet hits a person he doesn't even see, he doesn't even know was injured, he never even aimed at, then he does not have the intent to use force against the person. Could I just come back to Wazin? I think that's mainly why we're here right now, is because the Supreme Court decided Wazin. And you've made reference to Justice Sotomayor, but of course she was in dissent. I'm sorry if I wasn't clear. I was making reference to her in the Castleman case at 1409, her majority opinion in Castleman. Well, all right. But in Wazin we have a court saying that a conviction under statute that could be violated based on recklessness is a crime of violence. No, I disagree, Your Honor. The court is saying a conviction on recklessness is use of force for a misdemeanor conviction that will prevent you from having a firearm. The court did not say use of force, recklessness is a crime of violence. What does 921A33A require then? It requires a common law conviction for using force against a domestic partner. It relies on a common law definition. And the court, and I go back to Justice Scalia and Curtis Johnson, he was the one who emphasized. Yeah, but, you know, I understand you want to cite those, but Wazin, tell me why Wazin, why you can get around that case. Because Wazin interpreted the common law definition of use of force. Because 924C does not rely on the common law definition of use of force. 924C is a statutory phrase in which Congress did not define what use of force subsumes. And since Leocal we've been struggling to define it and we now find ourselves in the last unknown area. Where does recklessness fit in that statutory definition? Let me, in Wazin they were interpreting the language of the main statute. Yes, ma'am. And the main statute said that it was a violation for if you recklessly cause bodily injury to another. And you are guilty of domestic violence. Right. And they held that the person convicted of this main statute had committed a crime of violence. A misdemeanor crime of domestic violence. Had committed a misdemeanor offense of domestic violence under the common law definition of use of force. Yes, ma'am. But in their analysis they focused on the recklessness and they didn't require that there be a specific type of volitional act that's defined in the statute. It was general, just like this statute is general. And they focused on what it takes to meet the mens rea of recklessness and said if you volitionally commit an act with that mens rea. So you have sort of two prongs, one is that you act not accidentally, not negligently, but volitionally. That you combine that with the reckless state of mind that it's enough. That it's enough to convict you of misdemeanor domestic violence. If I was arguing that Mr. Mann's reckless conduct is not enough to convict him of assault resulting in serious bodily injury, then Gauzin would apply perfectly. But the question is, is assault resulting in serious bodily injury the same kind of crime as assault with intent to commit bodily injury that qualifies it as a crime of violence. And I think the distinction is important. Mr. Mann was convicted of involuntary manslaughter and not given a 924C because involuntary manslaughter is not a crime of violence. Second degree murder, whether he was charged with, he was found not guilty. Assault with intent to commit bodily injury, he was found not guilty. Those are crimes of violence because the intent element is plainly stated either in the statute or the jury instructions or the underlying crime. But involuntary manslaughter is the same as assault resulting in serious bodily injury. It's a general intent crime. We don't dispute that he's guilty of these offenses, we dispute that these offenses are not categorically a crime of violence. Because they lack that element of purposeful, violent, intentional conflict. It's not willful. It's not intentional. And that's why we respectfully request that the court affirm the district. And that's our first questions.  Thank you, counsel. I'd just like to briefly address a few issues raised by my opposing counsel. First, he briefly mentioned Sixth Amendment concerns, but of course those don't arise in a 924C violation where the jury has to in fact find the underlying crime of violence. Secondly, as to the discussion of common law terms, in Castleman and Johnson, there is a discussion of the meaning of the word force. And the court discussed the common law meaning of assault when discussing the meaning of the word force. Voisin, however, did not discuss the common law, but rather referred to dictionary definitions of the word use. And the word use means the same thing whether it is in the misdemeanor crime of domestic violence context or in the 924C crime of violence context. In order to commit a crime of violence, one must have intended to do harm. Of course, this court has already ruled that out in Ramon Silva even before Voisin was issued, holding that specific intent is not required in order to have committed a violent felony under the ACCA. I'd finally like to address some of the volitional acts that defense counsel argues would fall under 113A6, such as shooting a gun in the air or accidentally hitting someone when you were hunting. Of course, 113A6 does not simply require a volitional act, but it requires a volitional act in conscious disregard of a known risk of serious bodily injury to the person of another. And so perhaps there may be an instance in which a hunter is guilty of 113A6 because he shoots consciously disregarding a risk to someone and is not guilty under that statute either. If there are no further questions, we'd like to ask the court to reverse the dismissal of the indictment. Thank you very much. Thank you, counsel. I'd like to police the arguments on this case. The case will be submitted and counsel are excused.